**Lonnie Ray BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47126.**

Court of Criminal Appeals of Texas.

**Feb. 27, 1974.**

Selden B. Hale, Amarillo, for appellant.

Tom Hamilton, Dist. Atty., Plainview, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder with malice. The jury assessed punishment at death.

Appellant was convicted of the January 14, 1971, murder of Lillian Kesler. The State relied in part on the testimony of an accomplice witness, Bobby DeShazo. The sufficiency of the evidence is challenged.

On the afternoon of January 13, the appellant, DeShazo and Billy Croft decided to burglarize several farmhouses. During that evening, they entered the home of I. H. Parks near South Plains where they took a twelve-gauge shotgun. On arriving at the Kesler farmhouse near Tulia, they broke down the door and entered, believing no one to be at home. While DeShazo stood watch outside, appellant and Croft entered. They discovered Mrs. Kesler, a seventy-nine year old widow, armed with a .22 caliber pistol. Croft apparently talked her into surrendering the pistol. De Shazo heard a shotgun blast and entered to discover Mrs. Kesler kneeling on the floor with a wound in her stomach. De Shazo then saw appellant take the Parks' shotgun from Croft and shoot Mrs. Kesler in the head, killing her.

Appellant first contends that the imposition of the death penalty constitutes cruel and unusual punishment. The sentence has been commuted to life and the question is now moot. See Whan v. State, Tex.Cr. App., 485 S.W.2d 275, and Stanley v. State, Tex.Cr.App., 490 S.W.2d 828.

Appellant next contends the trial court erred in failing to hold a sanity hearing to determine his competency to stand trial.

Appellant filed a motion on August 3, 1971, requesting a psychiatric examination to determine his competency, as provided by Article 46.02, Vernon's Ann.C.C.P. The trial court appointed psychiatrists to examine appellant, but the record does not show the results of an examination. Appellant did not pursue the matter further.

He relies on the rule announced in Townsend v. State, Tex.Cr.App., 427 S.W. 2d 55, that where the evidence raises a doubt about the competency of the accused to stand trial, the trial court should, on its own motion, conduct a separate hearing on his competency.

We cannot say that the trial court abused its discretion by failing to conduct a competency hearing where, as here, appellant merely requested a psychiatric examination, but thereafter failed to raise the issue by motion or request, and where the record is devoid of any act, circumstances or evidence which raises a bona fide doubt as to appellant's competency to stand trial.

Perryman v. State, Tex.Cr.App., 506 S.W. 2d 753 (1974); Zapata v. State, Tex.Cr. App., 493 S.W.2d 801, cert. den. —— U.S. ——, 94 S.Ct. 865, 38 L.Ed.2d 752 (1974); Boss v. State, Tex.Cr.App., 489 S.W.2d 580. See also Vardas v. State, Tex.Cr. App., 488 S.W.2d 467, and Perryman v. State, Tex.Cr.App., 494 S.W.2d 542.

In his next three grounds of error, appellant contends that the trial court erred in failing to submit his special requested charges that Billy Doherty and William T. Wright were accomplices as a matter of law, and that the record is insufficient to support the conviction absent uncorroborated accomplice testimony. The question of whether both Doherty and Wright were accomplices as a matter of fact was submitted to the jury.

Doherty testified that Croft met him at a Lubbock service station where Doherty worked on the evening of January 16, showed him a .22 caliber pistol, left it with him for less than an hour. Croft then gave him the pistol on January 24, just before they robbed a Lubbock 7–11 store. At that time, Croft told him, "Don't get caught with it, it has a murder rap on it." Doherty stated that this was the first time Croft had said anything about the pistol or mentioned a murder. Doherty admitted that he knew the pistol had some connection with a murder, but denied any knowledge of Croft's involvement in the murder of Lillian Kesler.

William T. Wright testified that on January 14 appellant and DeShazo contacted him and offered to sell him some "merchandise." Wright admitted knowing that the "merchandise" was stolen and that he had traded a used car for it, but he denied any knowledge of the Kesler murder until after the transaction. He stated that several days later appellant told him they had shot the old woman because "she caught us." Over a period of weeks, he learned that appellant, DeShazo and Croft were all involved in the Kesler robbery. Wright also admitted disposing of a sawed-off shotgun they had used in the burglaries. Wright related this information to Texas Ranger Clay Bednar and the Lubbock police, and surrendered the "merchandise" he had purchased from appellant and DeShazo. He also related to Ranger Bednar that he had offered appellant $100 to help him escape to Canada, but claimed he did so solely to maintain appellant's confidence in him so he could obtain further information. Wright continued to inform Bednar of appellant's whereabouts up to the time of his arrest. Recently in Zitterich v. State, Tex.Cr.App., 502 S.W.2d 144 (1973), the Court restated the rule announced in Allen v. State, Tex.Cr.App., 461 S.W.2d 622, which stated:

" . . . where there is any doubt as to the fact that a given witness is an accomplice witness and such fact issue is submitted to the jury, such procedure is sufficient even though the evidence appears largely to preponderate in favor of the fact that such witness is an accomplice witness as a matter of law."

An accomplice witness means a person who either as a principal or accessory was connected with the crime by unlawful act or omission on his part, transpiring either before, at the time of, or after the commission of the offense, and whether or not he was present and participated in the crime. Johnson v. State, Tex.Cr.App., 502 S.W.2d 761 (1973). See also Article 38.14, V.A.C.C.P., note 2.

The evidence shows that neither Doherty nor Wright was present and participated in the robbery and murder of Mrs. Kesler. Both testified that they had no knowledge of the murder until after the crime was completed, and both denied that any transactions with appellant, DeShazo or Croft were in any way connected with the Kesler robbery and murder. Such testimony is sufficient to create a doubt whether their acts were connected with the murder and to raise a fact issue as to whether Doherty and Wright were accomplice witnesses. Therefore, the trial court

properly refused to charge that they were accomplice witnesses as a matter of law.

■ The jury having found that witnesses Doherty and Wright were not accomplice witnesses, their testimony need not be corroborated. We hold that their testimony, along with other evidence presented, is sufficient to support the conviction.

Appellant next complains that the district attorney committed improper jury argument in the following remarks made at the guilt stage of the trial:

"MR. HAMILTON (District Attorney): . . . You heard the testimony and I want you to look at the testimony again with me. You can't know all of the background in the case because it is not all in evidence, but I want you to look at that portion—

"MR. KNAPP (Defense Counsel): I move for a mistrial, Your Honor.

"THE COURT: I overrule that motion and instruct the jury not to consider that comment for any purpose in this case.

"MR. HAMILTON: Your Honor, I would like to say this in order to clarify that: Only one person has been tried here and we have two others to try. That is what I meant. . . ."

Appellant relies on Stearn v. State, Tex. Cr.App., 487 S.W.2d 734, in which this Court held that the prosecuting attorney's remark, "We couldn't bring you all of the circumstances surrounding the arrest," constituted reversible error. In Stearn, it was written:

"This Court has held that somewhat similar arguments did not constitute reversible error: (1) when objections thereto were sustained and the jury instructed to disregard the same, e. g., Haywood v. State, Tex.Cr.App., 482 S. W.2d 855; Alexander v. State, Tex.Cr. App., 479 S.W.2d 44; Heartfield v.

State, Tex.Cr.App., 470 S.W.2d 895. . . ." At page 735.

■ An instruction by the court to the jury to disregard improper remarks of counsel is ordinarily held to overcome any harm or prejudice caused by the argument unless the remarks are so inflammatory that their prejudicial effects could not reasonably be removed by such an admonition. Hodge v. State, Tex.Cr.App., 488 S.W.2d 779. See also 56 Tex.Jur.2d, Trial, Section 326, page 687. We hold that error, if any, in the prosecutor's remark was not such that could not be removed by the instruction given by the trial court.

Appellant next contends that the trial court erred in refusing to grant his motion for mistrial following an unresponsive reply by State's witness Wright during cross-examination. Wright was being cross-examined by defense counsel concerning prior inconsistent statements made by him to the grand jury investigating the murder when the following occurred:

"MR. KNAPP: Tell them the same story you are telling here today?

"MR. WRIGHT: No, Sir.

"MR. KNAPP: What did you tell them, if you recall?

"MR. WRIGHT: Judge, do I have to answer this question?

"THE COURT: Yes, sir.

"MR. WRIGHT: I can't answer that question.

"MR. HAMILTON: Your Honor, I request that the witness be required to answer it. I'd like to have the jury excused.

"MR. WRIGHT: Your Honor, my life has been threatened three times this week. I was told I'd be shot if I even came here."

Appellant moved for a mistrial and the jury was retired from the courtroom. The district attorney then stated that the State

had learned of the threats against Wright's life and had so advised defense counsel, that defense counsel had had an opportunity to talk to Wright prior to the trial, but that the State was unaware that Wright might reply to appellant's questioning in such a manner. Defense counsel admitted talking with Wright just prior to his being called as a witness and that Wright had also told him of the threats. The motion for mistrial was denied, the jury was returned and was instructed not to consider the witness' outburst for any purpose. The court then directed Wright to answer the question.

Appellant contends that the witness' remark was spontaneous and not invited and was so highly prejudicial as to be incapable of being cured by the court's instructions to disregard it. He also contends that the remark was suggestive of extraneous offenses and "clearly gave the impression that such threats were made by the defendant or his agents."

As long ago as 1896, this Court, in Thompson v. State, 35 Tex.Cr.R. 511, 34 S.W. 629, held that testimony explaining a witness' failure to identify the accused as the robber of a train, after he had made a positive identification at the time of the robbery, resulted from fear for his personal safety should he accuse the defendant of the crime, was "legitimate testimony to explain his conduct." In Ayres v. State, 105 Tex.Cr.R. 15, 284 S.W. 960, we held that the trial court properly overruled objections to the testimony of a witness that her former husband, a co-defendant, had threatened to kill her if she testified about the robbery. There, the record disclosed that the appellant had attempted to impeach the witness by showing prior inconsistent statements denying her husband had anything to do with the robbery. We further held that her testimony concerning the threats against her life "was certainly admissible as tending to explain this contradictory statement which the appellant showed had been made by her." Further, "any act or conduct of a party from which

it may be inferred that the facts in issue are not as he now claims may be introduced against him," such as that a party attempted to intimidate a witness. 2 McCormick & Ray, Section 1148, note 92, page 39.

In the instant case, appellant's counsel was attempting to discover whether Wright had testified differently before the grand jury, and, if so, to impeach him on such prior inconsistent statements. Wright was apparently attempting to conceal either the nature of his testimony to the grand jury or the fact that he did testify, because he later admitted he had testified to the same facts before the grand jury as he had at trial. It is not necessary to determine if his statement as to threats against his life was admissible as an explanation of his refusal to answer the question regarding his grand jury testimony and the implication that his earlier testimony was inconsistent, because of the trial court's prompt instruction to the jury to disregard the remark.

Appellant's eighth and ninth grounds of error complain of the introduction of evidence relating to an extraneous offense. Specifically, he contends the trial court erred in overruling his motion in limine and objections to testimony regarding the armed robbery of a Lubbock convenience store eleven days after the murder of Mrs. Kesler which led to the recovery of the .22 caliber pistol taken from the home of the deceased.

Lubbock police officer Harrington was permitted to testify regarding the circumstances of the arrest of Billy Doherty and Billy Croft for the January 25th robbery of a 7–11 store. He stated that a .22 caliber pistol was recovered from Doherty. Doherty was permitted to testify as to the circumstances of the armed robbery, and particularly to the fact that the pistol he used had been given him by Croft with the warning about it's carrying a murder rap. Other evidence showed that the pistol was taken from the deceased by Croft on the night of the murder.

It has long been the rule that an accused can be convicted, if at all, only by evidence that shows he is guilty of the offense charged, and that evidence that he has committed other crimes that are remote and wholly disconnected from the offense with which he is charged is ordinarily inadmissible. 23 Tex.Jur.2d, Evidence, Section 194, page 294. There are, of course, exceptions to this general rule, see 23 Tex.Jur.2d, Evidence, Section 195, page 300, but it is error to admit evidence of another offense when a defendant is not shown to be the party guilty of that offense. 1 Branch's Ann.P.C.2d, Section 188, page 204.

Evidence of an independent crime is inadmissible for the reason, among others, that it ordinarily does not tend to establish the commission by accused of the offense charged, that its tendency to inflame and prejudice the jury outweighs its evidentiary value, that accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally, that accused must be tried for one offense at a time, and that the evidence must be confined to the point in issue. 22A C.J.S. Criminal Law § 682, page 736.

In the instant case, there is no problem regarding proof of appellant's guilt of the extraneous offense of armed robbery. There was affirmative and uncontradicted testimony that appellant had nothing whatsoever to do with the 7–11 robbery. Officer Harrington testified that he never saw appellant in connection with the investigation and arrest of Doherty and Croft for the 7–11 robbery. Doherty testified that appellant was asleep in his parked car at Croft's girlfriend's home, and that he neither participated in nor even knew about the robbery. Moreover, following Officer Harrington's testimony, the trial court instructed the jury as follows:

"Ladies and gentlemen of the jury, I instruct you that any testimony as to any offense that might have been committed by any other person or any information relating thereto should not be considered by you as any circumstance or indication of the guilt of this defendant and it should be disregarded by you. It was submitted solely for the purpose of aiding you, if it does aid you, in determining the chain of custody of the pistol in question and should be considered by you solely for that purpose."

Instructions to the same effect were also given following Doherty's testimony.

Upon such evidence and instructions of the court, the jury was clearly precluded from assuming or speculating as to any guilt of appellant in the commission of the 7–11 robbery. Therefore, where, as here, the evidence affirmatively shows appellant was free of any guilt in the commission of an extraneous offense, evidence of an extraneous offense committed by others which tends to connect the accused with the commission of the offense charged is admissible because no undue prejudice to the accused can result from the showing of the extraneous offense.

Further, the evidence shows that a .22 caliber pistol was the only object taken from the Kesler residence. The pistol recovered from Doherty by Officer Harrington was proved to be the same pistol. As such, the State is entitled to trace the pistol to show the chain of possession, because it is relevant and material to the issue of the identity of the murderer or murderers of Mrs. Kesler.

In his tenth and eleventh grounds of error, appellant claims the trial court erred in instructing the jury out of his presence and that of his counsel.

The complained of instructions were given to the jury immediately following the court's declaration of an overnight recess. The jury was conducted back to the jury room and were there joined by the trial judge and court reporter. In both instances, the trial court's instructions related to an explanation of the alternatives of

keeping them together or permitting them to separate for the evening, and the importance of not discussing the case with anyone or following any newspaper, radio or television account of the trial upon separation.

It has been the uniform holding of this Court that the giving of additional instructions to a jury by the trial court without compliance with the statutes requiring such communication to be in open court and in the presence of the defendant constitutes reversible error. Myles v. State, 170 Tex. Cr.R. 479, 341 S.W.2d 913. We have also held that a communication between the court and the jury, although not made in compliance with the provisions of the statutes, which does not amount to an additional instruction by the court upon the law or some phase of the case, does not constitute reversible error. Allaben v. State, Tex.Cr.App., 418 S.W.2d 517; Arrevalo v. State, Tex.Cr.App., 489 S.W.2d 569.

■ In the instant case, the trial court, in his statement to the jury panel, had informed the jury that trial of the case might require an overnight recess and that during such recess they must be very careful not to discuss the case with anyone or follow any newspaper, radio or television account of the trial. After a careful study of these instructions we hold that, while the trial court should not have given such instructions to the jury while not in open court and outside the presence of the appellant, such instructions amounted to no more than a restatement and reminder of the earlier instructions given the entire jury panel. As such, the trial court committed no reversible error.

Appellant next contends that the trial court committed reversible error in failing to grant his motion for mistrial following comments by the district attorney relating to the defendant's failure to testify.

■ The complained of remarks occurred during the State's opening state-

ment during the voir dire examination of the jury panel. The district attorney explained the constitutional guarantee that a defendant is not required to take the stand in his own behalf, that the burden of proof is upon the State, and that failure to testify cannot be considered as evidence against him. Appellant's motion for mistrial was overruled following the district attorney's remark:

"Maybe he stutters; maybe his lawyer has told him he should not take the stand; maybe he just doesn't want to take the stand. He has that right and . . . . ."

At trial on the merits, appellant did not testify and the trial court properly instructed the jury, as required by Article 38.08, V.A.C.C.P.:

" . . . you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him."

While the district attorney's remarks may constitute a comment on the appellant's right not to testify, we hold that his remarks do not constitute reversible error. In Bannon v. State, Tex.Cr.App., 406 S. W.2d 908, cert. denied 385 U.S. 816, 87 S. Ct. 38, 17 L.Ed.2d 55, we held that the reading of that portion of the charge instructing the jury in accordance with Article 38.08, supra, did not constitute a comment on the failure of appellant to testify. In Ramos v. State, Tex.Cr.App., 419 S.W. 2d 359, we held to be harmless error the prosecutor's remarks that "under our laws, after a man is arrested he cannot be compelled to give evidence against himself. He doesn't have to take the stand. It's in the charge."

The remarks here were not in derogation of appellant's right to testify. In recognizing this right, these remarks merely paraphrased the trial court's own charge to the jury. Hardy v. State, Tex.Cr.App., 496 S.

W.2d 635. Appellant's contention is overruled.

Appellant finally contends that the trial court erred in failing to grant his special requested charge on circumstantial evidence. Such contention is without merit. In view of the testimony of the accomplice witness, DeShazo, that he saw appellant shoot Mrs. Kesler, the court did not err in failing to charge upon the law of circumstantial evidence. Washington v. State, Tex.Cr.App., 434 S.W.2d 138; Wagner v. State, Tex.Cr.App., 463 S.W.2d 432. Where there is direct evidence against an accused, though it is that of an accomplice, a charge on circumstantial evidence is not required. White v. State, Tex.Cr.App., 385 S.W.2d 397; 31 Tex.Jur.2d, Instructions, Section 123, page 688.

There being no reversible error, the judgment, as commuted, is affirmed.